THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-
ror, *vs.* CHARLES HANNIBAL, Plaintiff in Error.

*Opinion filed October 28, 1913.*

1. CRIMINAL LAW—*what is sufficient proof of corpus delicti in
arson case.* Proof that a school house in a country district was
destroyed by fire about two o'clock in the morning, and that a
man's foot-prints, made at a time when the grass and stubble were
wet with dew, were found leading to and from the building, is suf-
ficient proof of the *corpus delicti* to justify admitting the testi-
mony of witnesses that the person charged with the crime con-
fessed it to them.

2. SAME—*when a judgment of conviction for arson cannot be
reversed on the evidence.* A judgment convicting the defendant
of the crime of arson in burning a school house cannot be reversed
as not supported by the evidence, where the evidence shows that

foot-prints were found leading both ways between the burned building and the defendant's home and that the tracks corresponded in size and imprint with the shoes worn by the defendant that morning, and where three witnesses testified that the defendant confessed the crime, although their testimony was contradicted by him.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

JAMES E. DOWLING, and ROBERT H. PATTON, for plaintiff in error.

P. J. LUCEY, Attorney General, EDMUND BURKE, State's Attorney, and ARTHUR R. ROY, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error was indicted, tried and convicted in the circuit court of Sangamon county for the crime of arson and was sentenced to the penitentiary for an indefinite term. The indictment charged him with feloniously, willfully and maliciously burning a school house. The school house was burned about two o'clock in the morning of September 2, 1912, and was a country district school house. Plaintiff in error was a single man, twenty-eight years of age, and lived on a farm with his father. His residence was less than one-fourth of a mile from the school house.

It is first contended that the confession of plaintiff in error, which was proved by the prosecution by the testimony of three witnesses, was erroneously admitted before proof had been made of the *corpus delicti*. The circumstances proven made it reasonably certain that the fire which caused the destruction of the building was started by someone in the early morning of September 2. A man's tracks leading to and from the building were found, and it appeared they were made at a time when the grass and stubble were wet with dew. Sufficient proof of the *corpus delicti* was made to justify the admission of the confession.

259 – 33

(*Carlton* v. *People,* 150 Ill. 181; *Bergen* v. *People,* 17 id.
426; *Campbell* v. *People,* 159 id. 9; *Smith* v. *State,* 64
Ga. 605; *State* v. *Rogoway,* 45 Ore. 601; 2 Am. & Eng.
Ann. Cas. 431.) Mrs. Mary Stevens and her daughter tes-
tified school was to begin at the school house on Monday,
September 2; that on the previous Thursday they together
cleaned out the school building, and while they were doing
so plaintiff in error came to the building and inquired if
they were going to lock the door or put a lock on the door
to fasten it; that there was no lock on the door; that they
told plaintiff in error they were not going to put a lock on
the door. At the April election preceding the burning of
the school house plaintiff in error had been a candidate for
school director but was defeated by a man named Stevens.
A. H. Bogardus, a deputy State fire marshal, testified he
was notified of the fire about five o'clock on the morning
it occurred, and that he and a deputy sheriff named Wal-
ters, and a Mr. Strumpfer, went out in an automobile to
where the building was burned. They found foot-prints
going both ways between the school house and the resi-
dence of plaintiff in error. Starting from the school house
they followed the tracks in a path some distance south, in
the direction of the plaintiff in error's house, along the side
of a fence. The path was dusty, and they found where the
person making the tracks had crossed the fence by climbing
over a gate. The tracks then led across a road, through a
gap in a fence, into a stubble field. It was early in the
morning and the dew was knocked off the stubble and grass,
and in that manner they continued to follow the trail until
it struck plowed ground and crossed another fence at a place
where there was a stump, which showed the party making
the tracks had stepped on the stump. From there the tracks
led into the barn lot or yard of plaintiff in error's father
and through or over a gate into the house-yard and could
be followed no further. Some dogs were with the wit-
nesses, and when the witnesses arrived at plaintiff in error's

house he picked up a club, came towards them, and said, "What in the hell are you doing with those dogs in here?" At that time nothing had been said to him. Strumpfer, at the direction of Bogardus, measured the tracks they followed to the plaintiff in error's house, which they testified were fresh and distinct. The measurement was compared with shoes plaintiff in error had on that morning and they corresponded in size with the tracks. The tracks show the counter of one shoe was turned over a little more than the other, and this corresponded with shoes of plaintiff in error.

Bogardus, Walters and Strumpfer testified that in the jail, on the fourth day of September, the plaintiff in error confessed that he had burned the school house; that he set fire to it at 1 :30 o'clock in the morning of September 2 because he was mad at Tim Stevens, a director, and he described where and how he started the fire and the route he took in going to and from the school house. On the trial he testified he never made any confession and denied burning the school house. Another prisoner in the jail testified he was so situated that he could hear the conversation between plaintiff in error and the three witnesses who testified to his confession, and that he never made any confession but denied he had burned the school house. The father of plaintiff in error testified his son retired to bed about eight o'clock the night the school house was burned; that about two o'clock in the morning he (the father) had occasion to get up and pass through his son's room; that he saw the fire and went to his son's bed and found his son in bed, asleep. About five o'clock in the morning the father went to the school house but plaintiff in error did not go. A reviewing court would not be justified in reversing the judgment on the ground that it is not justified by the evidence.

A number of instructions given on behalf of the prosecution are criticised and the ruling of the court in refusing two instructions asked by plaintiff in error is complained

of. We find no fault with the instructions given and no error in refusing the instructions.

It is also contended that the conduct of the State's attorney, in his argument to the jury, was highly prejudicial to plaintiff in error. We have carefully examined this assignment of error, and while it appears the State's attorney made one or two references, in his argument, to matters which were improper, they were not of a character that would justify a reversal of the judgment.

On the whole record we find no error that would justify a reversal of the judgment, and it is affirmed.

*Judgment affirmed.*