#### 6228. WADE v. THE STATE.

The evidence, while circumstantial, was sufficient to establish the corpus delicti, and showed a motive on the part of the defendant to commit the crime, and sufficiently connected him therewith to exclude every other reasonable hypothesis than that of his guilt.

DECIDED MARCH 23, 1915.

Indictment for arson; from Crisp superior court—Judge George. December 4, 1914.

*John B. Guerry,* for plaintiff in error.

*Joseph B. Wall, solicitor-general,* contra.

WADE, J. About two o'clock in the morning of January 9, 1914, a barn in which were 7 mules and 2 horses, besides hay and fodder, on the place of Mrs. J. R. Felder, about 200 yards from her dwelling-house, was destroyed by fire, together with the live stock and other contents thereof. There had been no fire about the barn during the day preceding the burning, and the fire broke out long after any one had legitimate occasion to be in or around the barn. The evidence showed also that no gasoline, oil, or like combustible materials were stored in the barn, and when the fire was observed by the owner's husband, it appeared to him to have started in

front of the barn, though the entire structure was then blazing all over. The plaintiff in error, Charlie Wade, a negro, worked for J. R. Felder, the owner's husband, during the year 1913, but left his employer a short time before Christmas of that year, after assuring Mr. Felder that he expected to remain with him; though there was no occasion for his giving this assurance, as he had permission to go if he wished to do so. He removed to a place belonging to Dr. Liggin, adjoining the Felder place, and only a short distance from the barn in question, and was living there when the fire occurred. A day or so before the burning he stated to a witness that John Felder, the son of the owner of the barn, had frightened his mule with an automobile and caused it to tear up his buggy, and if Mr. Felder did not pay for having the buggy repaired, he would make him (Felder) "lose ten times the worth of that buggy." It appeared also that the buggy and some cotton were levied upon in behalf of Felder, and the defendant said in this connection that he would make Felder lose ten times the worth of the buggy; and it was shown by different witnesses that on another occasion he made threats to the effect that he would cause Mr. Felder to lose something. The defendant's buggy was then on the side of the road, with two wheels broken down, and he said that his mule ran against a post and broke the buggy because it was frightened by a car driven by Mr. Felder's son; and further that he had some cotton in town which Mr. Felder had attached, and if Mr. Felder did not pay for the buggy, he would make it cost him several times as much, though he did not say what he was going to do to accomplish this result. This was said a few days only before the barn was burned.

Early the next day after the fire, the sheriff was sent for and came with dogs belonging to the county. Fresh tracks were discovered, leading up to the barn, and going away from it in the direction of the house where the defendant lived. These tracks were made by a pair of worn-out shoes which were "worn all around the counters, and where one of the shoes made a track, the leather would catch on the ground, and one of the shoes had no sole much on it." The tracks were discovered where hogs had been rooting in a sweet-potato patch, and the ground was soft and moist, and the tracks were quite distinct. The tracks leading towards the barn were closer together than those leading away, and indicated

that the person going from the barn was moving at a more rapid rate than when he approached it. Dogs followed the tracks leading from the barn to a point on a ditch in the direction of the house of the defendant. Here it appeared, from marks on the bank of this dry ditch, that the person wearing the badly worn shoes and making the tracks which the dogs had followed to this point had seated himself and changed his shoes for another pair, for the dogs refused to follow the tracks farther, and the only tracks leading off from this point, except the tracks going towards the barn and returning, led in the direction of and up to the house of the defendant and were made by other and different shoes. The last-mentioned tracks (which were clearly defined, as they crossed over soft plowed ground) were followed by the sheriff and his posse to the defendant's house. The defendant was not at his house, but at the house of his employer, Dr. Liggin, where he was found eating breakfast. He then had on his feet a pair of shoes which were later measured and compared with the tracks between the ditch and his house, and found to correspond exactly in every particular. He accompanied the sheriff from his house to the point on the ditch already referred to, and the tracks then made by him, as he walked along in the same direction and parallel with the line of tracks going from that point to his house, were identical in every particular with those leading to his house. At his house the posse discovered a pair of shoes which were badly worn and which, when pressed into the soft earth, made tracks identical in every minute particular with the tracks leading towards the barn from the direction of the defendant's house and back from the barn towards the ditch and his house. These shoes when discovered were somewhat moist underneath, and damp sand was clinging to them, and there were some grass-seeds in them. There was testimony showing that the tracks from the barn to the ditch were made by the same shoes discovered in the defendant's house a few hours after the burning, and that the tracks from the ditch to his house were made by the shoes that were on his feet at the time he was arrested by the sheriff, the morning following the commission of the crime. There was also testimony from several witnesses that he stated early in the morning when the fire occurred, and some hours thereafter, while discussing the burning with several other negroes on the plantation where he lived, that it was Mr. Felder's barn that was

burning, as he had been out in his yard between one and two
o'clock that morning, and had seen the fire; though in his state-
ment at the trial he said that he had not been out of his house the
night of the fire, after he had gone to bed some hours before; and
it appeared further that he was the first person on the plantation
where he lived to discover the fire; that none of those there, by
whom it was discussed, except the defendant, could determine what
particular building on the place of Mr. Felder was burning; and
that when requested by one Mr. Whiteside to saddle the horse and
go over to Mr. Felder's place and ascertain whether it was his house
or barn which had been destroyed, the defendant declined to go,
and gave no reason for not going.   When he spoke to this witness
about the fire he said: "Look over yonder, Mr. Felder's barn is
burning up."   The witness testified, that he noticed the fire that
the defendant spoke about, but could not tell whether it was the
barn or the residence of Mr. Felder; that he could see the house
because it was between the witness and the barn, but could not de-
termine by looking over it whether the barn or the house was
burning.   The shoes found in the defendant's house, and which
several witnesses testified made tracks identical with the tracks
leading away from the burned barn, were introduced in evidence,
and the defendant did not deny the ownership thereof, but con-
tented himself with asserting that he had not been on the place of
Mr. Felder at all, and denying that he had any grudge against
Mr. Felder, or that he had ever made threats against him.   The
tracks approaching the barn, as already stated, indicated, accord-
ing to some testimony, that the person making the tracks ap-
proached stealthily; and the tracks leading away from the barn,
made by the same pair of shoes, indicated that the person wearing
them ran away from the barn, as the tracks were further apart,
and, from their general appearance, were made, as asserted by
several witnesses, by a person running.

   The plaintiff in error insists that the corpus delicti is not suf-
ficiently shown by the circumstances in evidence to exclude every
reasonable hypothesis other than that the barn was feloniously
burned.   He insists also that, even if it be conceded that the burn-
ing was felonious, the evidence for the State is not sufficient to con-
nect him with the crime to the exclusion of every reasonable hypo-
thesis to the contrary.   It is well recognized that where nothing

appears to the contrary, a fire will be presumed to have originated from some accidental or providential cause; and the burden of course rests upon the State to establish the contrary beyond a reasonable doubt; and where circumstantial evidence is relied upon for that purpose, it must exclude every other reasonable hypothesis. Here the evidence discloses that a barn in and near which there had been no fire during the day preceding its destruction, and where no one had, for hours immediately before its destruction, had occasion to go for any legitimate reason, was discovered at two o'clock in the morning to be burning "all over;" and the fire appeared to have started at the front of the building. The structure had no combustibles, such as oil, gasolene, etc., housed therein, but was partially filled with hay and fodder, which when ignited would blaze out almost instantaneously and burn with great rapidity. The fire must therefore have been burning but a few minutes before it was discovered by the owner of the barn, living 200 yards away, and could not have been smoldering for any considerable time. The stealthy tracks leading up to the barn and the running tracks leading away from the barn, which were discovered early the next day, were fresh tracks, which the testimony showed must have been made at or about the time the fire originated. These facts, taken in conjunction with the facts already recited, which connected the defendant with the commission of the crime and showed that he held a grudge against the husband of the owner of the barn, appear to us to be amply sufficient, not only to show the corpus delicti, but to connect the defendant with the crime to the exclusion of every other reasonable hypothesis. It is not often possible to make out a case of arson by direct proof establishing the corpus delicti or showing the connection of the defendant with the commission of the crime, for arson is seldom committed except at an hour when there is small chance that the criminal will be actually observed in the execution of his nefarious purpose, and it is also generally easy to commit the crime by stealth, without the help of an accomplice, without the beating of drums or blare of trumpets or any betraying noises; and therefore circumstances must generally be depended upon not only to show the guilt of the accused, but to establish the corpus delicti. The rule that the circumstances proved should exclude every other reasonable hypothesis save that of the guilt of the accused should not be relaxed; but it does not

follow that the criminal must go unwhipped of justice because absolute proof is not presented by the State. If there be enough shown to convince the jury beyond a reasonable doubt that the guilt of the accused has been established to the exclusion of every other reasonable hypothesis, and no other reasonable hypothesis is suggested by the evidence, and there is nothing to indicate that the jury failed to accord to the defendant every consideration to which he was entitled, a reviewing court will not arbitrarily say that the conviction should be set aside.

In the case of *Green* v. *State,* 111 *Ga.* 139 (36 S. E. 609), relied upon by the plaintiff in error, the tracks discovered about the burned building were not compared with the tracks known to have been made by the defendant, except that one witness testified that she had noticed the tracks of the defendant while he worked at a certain place, and that she had looked at his tracks made in some sand, which corresponded "to the best of her knowledge, with the tracks discovered near the scene of the burning." The tracks were followed from the barn in that case only to a point within a mile of the place where the defendant lived. The court very properly held that the evidence, which was entirely circumstantial, in no way connected the accused with the arson and did not exclude every other reasonable hypothesis than that of his guilt. Also, there was no sufficient motive shown in that case. In the case of *Cummings* v. *State,* 110 *Ga.* 293 (45 S. E. 973), which the plaintiff in error likewise relies upon, the Supreme Court said: "Though the State's evidence very strongly and conclusively tended to establish the fact that tracks seen near the place of the crime, and which must have been made on the night it was committed, corresponded in minute particulars with shoes belonging to the accused, this, without more, was not sufficient to show, to the exclusion of every other reasonable hypothesis, that he committed the crime." It will be observed, however, that in that case, while the tracks seen near the place of the crime, and which must have been made on the night it was committed, corresponded in minute particulars to shoes belonging to the accused, there was nothing more to show, to the exclusion of every other reasonable hypothesis, that the defendant committed the crime. In the case under consideration the tracks approaching the barn led from the direction of the defendant's house, and the tracks leaving the barn led towards his house. The

shoes belonging to the defendant and found in his house corresponded in minute particulars with the tracks leading towards and away from the barn; the tracks were fresh and the shoes found in the house of the defendant showed unmistakable signs of recent wear—they were wet, moist sand was clinging to them, and grass-seeds were found within them; the shoes actually on the defendant's feet at the time he was arrested made a track identical with the track leading from a ditch on the direct route from the barn to his house, where the person making the track nearest the barn had apparently removed one pair of shoes and placed on his feet the identical shoes found on the feet of the defendant when arrested, which made the only tracks leading away from the ditch, except towards that barn and back from the barn to that point, and desire for revenge was shown to exist in the heart of the defendant, as a motive for the crime in this case. It appeared also that the defendant was able to determine what particular house was burning, when others, who had the same opportunity to make observations and who were at the same distance from the house, were unable to say which house it was. It is obvious that in this case much more was shown than in the *Cummings* case, supra.

In the *Gaither* case, 119 *Ga.* 118 (45 S. E. 973), the court said: "It does not appear that the tracks or the dogs went to any particular place in the yard, or that any further use was made of the dogs. The dogs did not go near the accused or to his house. . . There was no evidence as to the motive for the alleged crime." It further appeared that the accused stated to a witness, after the fire occurred, that he had stayed at a certain plantation in the neighborhood, after having spent the day at other places mentioned, and stayed there all night with a certain woman in a house in the yard, and there was no contradiction as to this, but to the contrary a witness testified: "We investigated the matter, and were told that he did spend the night there." Referring to evidence as to footprints at or near the scene of a crime, this court, in *Lindsey* v. *State*, 9 *Ga. App.* 299 (70 S. E. 1114), said: "This character of circumstantial evidence . . is not usually sufficient to authorize a conviction, unless there is some peculiarity in the tracks . . to clearly identify them as the tracks of the accused." Here it appeared that the person who left the scene of the crime about the time the fire was discovered made a track which had several un-

mistakable peculiarities, up to the point where he changed his shoes at the ditch, and from there on to the house of the accused. made a different track, which was clearly and unequivocally identified as exactly the same in every minute particular with the tracks made by the defendant when a few hours later he walked parallel to and near these tracks, and while he was wearing shoes found upon his feet when he was arrested; and it further appeared that the old pair of shoes, which were peculiar in several particulars, belonged to the defendant, and were found in his house immediately after the commission of the crime, with evidences of their recent use. See also *Hawthorne* v. *State,* 12 *Ga. App.* 811 (78 S..E. 473) ; *Brown* v. *State,* 6 *Ga. App.* 357, 358 (64 S. E. 1119) ; *Gregory* v. *State,* 80 *Ga.* 270 (7 S. E. 222)..

The testimony in behalf of the State sufficiently established the corpus delicti, and sufficiently connected the defendant with the commission of the crime to authorize the verdict returned by the jury.                                *Judgment affirmed.*

RUSSELL, C. J., dissenting. In my judgment the apprehension that a possibly guilty man may escape unduly constrains my colleagues to affirm the judgment in the present case. For myself, I am compelled to say that I see no proof whatever of the corpus delicti. Presumably every burning is accidental or providential, where the contrary does not appear. The burden rests upon the State to satisfy the jury beyond any reasonable doubt that the building alleged to have been burned was feloniously fired, with the intent to destroy the building to the injury of its owner; and where circumstantial evidence alone is relied upon, the degree of proof necessary for the purpose must be such as to remove every other reasonable supposition than that the building was purposely fired by the accused. Even if there had been direct proof that the defendant had during the night passed by the barn, or even if he had been seen to run from it, I do not think that this, without more, would have authorized the inference that he set fire to it, if it burned later in the night. The fact that tracks alone, even if distinctly identified, are insufficient of themselves to authorize conviction is almost universally recognized. So far as the present case is concerned, the mere circumstance that tracks similar to these made by two pairs of shoes (admittedly in the possession of the defendant) were found near the barn does not afford sufficient

identification to fix upon the defendant the making of the tracks in question, especially in these times of depression, when shoes with both counters run down and without half soles, and perchance with a piece of loose leather on the side, are not rarities. Such shoes were perhaps the only foot-wear of the laboring population in a radius of five miles. The defendant happened to have also a pair of good shoes, and of course the tracks made by him in wearing them would not only be similar but identical with the tracks of shoes of the same size and make worn by any other individual. The remark attributed to the defendant, that the barn which he saw burning was that of the prosecutor, must, in view of the jury's finding, be assumed to have been made by him, but a person would be in a hapless plight if he were convicted of barn burning because, by chance, he happened to guess the exact location of a fire. In my judgment none of the circumstances relied upon by the prosecution, nor all the circumstances collectively, suffice either to establish the corpus delicti or to show the participation of the accused in the alleged arson; and as regrettable as it may be that the detection of this dastardly crime is extremely difficult, the enforcement of the law can not be advanced by the punishment of any one not shown to be guilty under those well-established rules of law which have stood the test of centuries of experience. The conviction of an innocent man always emboldens the real culprit who thus escapes punishment to commit graver offenses.