15684

STATE v. BLOCKER ET AL.
(31 S. E. (2d), 908)

304

*Mr. L. A. Hutson,* of Orangeburg, S. C., Counsel for Appellant,

*Mr. Randolph Murdaugh,* Solicitor, of Hampton, S. C., appeared as Counsel for The State, Respondent.

October 30, 1944.

Mr. Associate Justice Oxner delivered the unanimous Opinion of the Court:

Appellant, William Blocker, and his wife, Daisy Blocker, were indicted for statutory arson. The indictment charged that they willfully and maliciously set fire to and burned the dwelling house of Zebb Cobb on September 17, 1943. The case was tried at the April term, 1944, of the Court of General Sessions of Colleton County. The State offered in evidence an oral confession claimed to have been made by appellant and his wife on September 19, 1943, and a written confession alleged to have been made by them on September 20, 1943. Counsel for defendants objected to the introduction of these confessions on the ground that there was no proof of the *corpus delicti.* The objection was overruled. At the close of all the testimony a motion for directed verdict on the same ground was made and overruled. The jury found appellant guilty and there was a mistrial as to appellant's wife. The trial Judge overruled a motion for a new trial made by ap-

pellant and imposed a sentence of fifteen years in the State Penitentiary.

The principal question raised on this appeal is whether there was any evidence apart from the confessions, reasonably tending to establish the *corpus delicti* so as to warrant the admission of the alleged confessions. The rule is well established that a conviction cannot be had on the extra-judicial confessions of the defendant, unless corroborated by proof *aliunde* of the *corpus delicti.* The *corpus delicti* in a case of arson consists of (1) a burned building or other property, and (2) some criminal agency which caused the burning. In other words, the *corpus delicti* includes not only the fact of burning, but it must also appear that the burning was by the willful act of some person, and not as a result of a natural or accidental cause; for if nothing appears but the mere fact that a building was consumed by fire, the presumption is that the fire was the result of accident or some providential cause. *State v. Brown et al.,* 103 S. C., 437, 88 S. E., 21, L. R. A., 1916-D., 1295; *State v. Edwards et al.,* 173 S. C., 161, 175 S. E., 277. Annotations on this subject will be found in 16 L. R. A. (N. S.), 285, L. R. A., 1916-D, 1299, and Ann. Cas., 1914-C., 330. This rule with regard to the proof of the *corpus delicti,* apart from the mere confession of the accused, proceeds upon the reason that the general fact, without which there could be no guilt either in the accused or in anyone else, must be established before anyone could be convicted of the perpetration of the alleged criminal act which caused it, for otherwise in the case of arson the accused might be convicted when there was no criminal agency involved in the burning.

While there is usually little difficulty in proving a burning, it is frequently exceedingly difficult to prove the criminal agency of some person in causing the burning. This was aptly pointed out by former Chief Justice Blease in the case of *State v. Edwards, supra.* He said (173 S. C.,

161, 175 S. E., 278) : "Clear proof as to the *corpus delicti* in an arson case is always a difficult matter. The burning usually occurs in the darkness of night, when the incendiary feels assured that there is no human eye who may see his hand apply the brand, and no human ear to hear the fall of his footsteps, as he stealthily approaches and retreats from the place of his criminality. Rarely has it happened that an eyewitness to the crime of arson could be produced. The prosecution in such cases must depend, generally, on circumstantial evidence. That evidence is necessarily often of a negative character; that is, the criminal agency is shown by the absence of circumstances, conditions, and surroundings indicating that the fire resulted from an accidental cause." In speaking of the function of this Court in determining the sufficiency of the proof of the *corpus delicti,* he further stated : "We are not here to determine the sufficiency of the evidence to justify the jury's verdict to the effect that the fire was one of incendiary origin; but we are concerned only with the question as to the sufficiency of that evidence to require the trial Judge to submit the issue of criminal agency to the jury. In other words, if there is any evidence tending to establish the *corpus delicti,* then it was the duty of the trial Judge to pass that question on to the jury. * * * Any reasonable inference that might be drawn by the jury from any circumstances established by competent testimony, indicating that the fire was not occasioned by an accidental cause, but resulted from a criminal agency, would, under our law, demand that the jury say whether or not the fire was the act of an incendiary."

The confessions were to the effect that appellant and his wife, in accordance with a previously conceived plan to burn Cobb's house, left their home with two quarts of kerosene and some matches at about ten o'clock on the night of September 17, 1943; went to the home of Cobb while he was away attending church services, where appellant's wife

poured the kerosene on the back end of the kitchen, struck a match and set the dwelling on fire; and after accomplishing their purpose, appellant and his wife returned to their home. The reason assigned in their confession for their conduct was their belief that some members of Cobb's family, about five weeks prior to this, had set fire to and burned their house and their desire "to get even with them." We shall now inquire whether, apart from these confessions, there was any evidence reasonably tending to show that this burning was of incendiary origin.

Both of these families are Negroes and lived in a rural section of Colleton County, about three miles from the town of Walterboro, and had known one another for some years. Their dwellings were 10 or 15 feet apart. For several months the Cobb family used the water from appellant's well and this continued until appellant stopped them. About a month prior to the buring of Cobb's house, the house of appellant burned. Appellant then moved to another house about a half mile from the house of Cobb. During the week of the fire in controversy a revival meeting was being conducted at a church about 150 yards from Cobb's home. Both families were members of this church. Cobb attended the services but appellant and his wife did not. At about eight o'clock on the night of the fire, Cobb left his eight children in the house and went to attend services at this church. According to Cobb's testimony, when he left there was no fire burning in the house except a lamp. The church services were concluded around 11:30 and when the congregation came out of the church, Cobb and others noticed the house on fire. They rushed to the house. Some of the household effects were moved and the children were rescued only a few minutes before the structure collapsed. The lamp was still burning and was removed from the house. The next morning a set of tracks made by a man were found leading across the field from appellant's house to the burned house and another set was found leading from the burned house back

to appellant's house. No one observed any tracks made by a woman.

The sheriff's office investigated the fire. At this time appellant was working at the Navy Yard in Charleston, but commuted from his home every day. He was arrested about a mile from his home, while returning from work at Charleston, late Saturday afternoon, September 18th. Appellant testified that his first knowledge of the fire was from information given him by the arresting officer, although he contended that the two families were very friendly and that both he and his wife were at their home, a half mile away, on the night of the fire. On the next day, Sunday, the sheriff and one of his deputies compared the tracks above referred to with the shoes of appellant and they corresponded. While denying having made the tracks, appellant testified that "my shoes fitted in the tracks." The sheriff testified that appellant admitted that these were his tracks. After the tracks in controversy were identified as those of appellant, the sheriff stated a free and voluntary oral confession was made to him by appellant and shortly thereafter by appellant's wife. On the following Monday morning, a deputy sheriff carried appellant and his wife to the sheriff's office. The widow of a former sheriff, who attended to the clerical duties of the office, testified that when appellant and his wife were brought to the office, they freely and voluntarily stated to her the contents of this confession, which she reduced to writing, and both confessions were signed in her presence.

Although the question is a close one, we are inclined to think that, independent of the confessions, there was some evidence tending to show that the fire was of incendiary origin. There was ill will by appellant toward Cobb's family. The two houses on adjoining lots, but wholly disconnected, burned within a period of a month. From the testimony as to the tracks, a reasonable inference may be drawn that appellant on the night of the fire went from his

house to Cobb's house and back to his own house. The testimony eliminates the lamp as a cause of the fire and the fact that a lamp was used indicates that electricity was not used. Other than the lamp, no fire was left in the house, If the children had accidentally set the house on fire, it is not unreasonable to suppose that some of the older of the eight children would have left the house before Cobb arrived. The fact that all of the children had to be taken out rather indicates they were asleep at the time. The construction of the usual Negro house in a rural area is such as to make spontaneous combustion very unlikely. Appellant's claimed ignorance of the fire until the following afternoon is rather unusual. The fire occurred at an hour when Cobb was known to be away from home. It may be argued that some of the circumstances tend more to point to the guilt of the accused than to the fact that the fire was of incendiary origin, but frequently the circumstances showing both facts are so interwoven that they cannot be wholly dissociated. Perhaps neither one of the foregoing circumstances, separately considered, was sufficient to warrant a reasonable inference that the fire was of incendiary origin; but when all are woven together, we think they were strong enough to require the Court to submit to the jury the issue as to the sufficiency of the proof of the *corpus delicti*. Of course, the burden rested on the State to establish before the jury every element of the offense beyond a reasonable doubt.

In *People v. Hannibal*, 259 Ill., 512, 102 N. E., 1042, Ann. Cas., 1914-C, 329, under circumstances very similar in many respects and less convincing than those here presented, the Court held that there was sufficient proof of the *corpus delicti* to justify the admission of the confession of the accused. There a school house was burned about two o'colck in the morning on the day school was to begin. Defendant's residence was about a quarter of a mile from the school house. Three or four days prior to the fire, defendant inquired of those cleaning the school house whether they were

going to lock the door and they stated that they were not. The morning after the fire footprints, identified as similar to those made by defendant's shoes, were found going both ways between the school house and defendant's residence. The confession disclosed a motive for the burning.

In the case of *Davis v. State,* 141 Ala., 62, 37 So., 676, a dwelling occupied by a tenant was burned. The tenant left the house locked and testified there was no fire in the house the day before the burning. Upon returning the next morning, the tenant found the house had been burned and some of his bedding and cooking utensils had been taken out and packed near the yard gate. Footprints were found near the burned house which led to a place where a mule had been hitched and from there mule tracks, identified as those made by a mule owned by defendant, led to a point a short distance from defendant's home. The Court held that the foregoing circumstances were sufficient to warrant the admission of a confession by defendant.

The case of *Wade v. State,* 16 Ga. App., 163, 84 S. E., 593, also tends to support the conclusion herein reached. Our own case of *State v. Brown, supra,* so strongly relied on by appellant, is easily distinguished. In the *Brown case* the only circumstances shown were the burning of a barn, motive by defendants for doing so, and statements of accused showing enmity against the owner of the barn. There were tracks near the place where the barn had been burned but the Court disregarded the evidence as to tracks because there were no peculiarities about them. The State also sought to connect the defendants by the action of dogs, but as the "conduct of the dogs" was not free and untrammelled, this testimony had to be rejected.

We shall now consider the remaining exceptions raised by appellant.

> While appellant was on the stand, he testified on direct examination that the arresting officer, a deputy sheriff, searched him, took his watch and pocketbook,

and never returned them. During the cross examination of the appellant, the Solicitor stated to him that if he would take out a warrant for the deputy sheriff for taking these articles, he would prosecute him at the next term of Court. Appellant's counsel objected to this statement. The Court, in sustaining the objection, said: "Now it has nothing to do with this case. *You brought it out with your own witness charging the deputy sheriff with stealing his watch.* I am going to rule the whole thing out. I am going to tell the jury to pay no attention to that whatsoever, because it has nothing to do with this case." (Emphasis ours) The Solicitor then apologized for making the statement and withdrew it. The Court thereupon further stated to the jury: "Not only what he said about the deputy sheriff taking his watch, which was brought out by his counsel, it is entirely irrelevant and has nothing to do with this case at all. Now, what the Solicitor said about prosecuting the deputy sheriff about taking the watch, disregard it entirely, as if it had not been said in the case. You are to try this man and his wife for burning the house. He is entitled to a fair trial and she is also entitled to a fair trial. I am telling you all of these things and you disregard what he said about the watch and what the Solicitor said about prosecuting him."

Appellant contends that the portion of the statement of the trial Judge which we have italicized and the offer by the Solicitor to prosecute the deputy sheriff for taking the watch were prejudicial to the rights of appellant. We are unable to see any prejudicial error connected with this incident. The jury was carefully cautioned to entirely disregard it.

Appellant contends that the definition of *corpus delicti* given by the Court in charging the jury was not full enough and was misleading. The Court fully charged the elements of the *corpus delicti* and the necessity of the State proving them. This contention is without merit. Complaint of the charge is further made in the contention

that the Court, in stating to the jury they did not have to believe the confessions of appellant and his wife, charged on the facts. After fully cautioning the jury that they could not consider the confessions unless they found that they were freely and voluntarily made, the Court used the following language, which includes the portion of which appellant complains: "Unless it appears that the confession is freely and voluntarily made it would not be admissible in evidence. I have already admitted this in evidence. So far as I am concerned you do not have to believe it, nothing in the law to make you believe it. You believe it like you would believe any other evidence. You try it like you would try any other evidence. You consider it in determining whether or not these defendants are guilty." We are unable to see how appellant could have been prejudiced by this portion of the charge.

It is contended that the Court erred in admitting these confessions in evidence because they were not freely and voluntarily made in that they were obtained by duress. This question was properly submitted to the jury. Appellant did not contend that these confessions were induced by threats, promise, or hope of reward; but the evidence shows that the defendants contended that they were misled by false representations that they were signing a bond for their release and appearance at the next term of Court. This contention was made despite the fact that they conceded on cross examination that they were not released that day and later put up a cash bond. It may not be amiss to say in passing that the explanation given by defendants for signing these statements was extremely unsatisfactory.

There are several other exceptions which, owing to their minor importance, we do not think it necessary to discuss. However, they have been carefully considered and we find no merit in them.

All exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.