Commonwealth *v.* Thomas, Appellant.

Argued December 17, 1958. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Charles F. Mayer,* for appellant.

*Martin M. Krimsky,* Assistant District Attorney, with him *Juanita Kidd Stout,* Assistant District Attorney, *James N. Lafferty,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY WRIGHT, J., March 18, 1959:

The theory of the Commonwealth in this case is that, on February 26, 1958, Leonard Thomas committed a burglary at the Philadelphia Federal Savings and Loan Association, 1619 Chestnut Street in the City of Philadelphia, taking approximately $36,000.00 in cash and $28,000.00 in checks. Thomas was apprehended and made one verbal and three written confessions, subsequently repudiated on the ground that they were involuntary. On April 17, 1958, he was indicted in the Court of Quarter Sessions of Philadelphia County on a charge of conspiracy at No. 548 April Sessions 1958, and on a charge of burglary and larceny at No. 551 April Sessions 1958. On June 6, 1958, following a four-day trial, the jury returned verdicts of guilty. Thomas' motions for a new trial and in arrest of judgment were subsequently overruled and, September 23,

1958, sentence was imposed at No. 551 and suspended at No. 548. These appeals followed.

A brief summary of the voluminous original record is as follows: John J. Collins of the Savings and Loan Association testified that at about 5:00 p.m. on February 25, 1958, currency and checks in total amount of $66,000.00 were placed in three metal boxes in a safe located in a vault on the basement floor, and that shortly after 8:00 a.m. on the morning of February 26, 1958, he discovered that the vault had been tampered with, the safe door opened and its contents removed. Edna Clark testified that appellant visited her at 11:00 that morning, exhibited a large amount of currency, purchased an automobile for her, paying $1,800.00 in cash, and that she subsequently made arrangements through Andy Ames for appellant to discount certain bills of large denomination. Appellant later gave Edna $800.00, and said "it was a clean job and the police would never find out who did it". The transaction relative to Edna's car was corroborated by Emil Matkoski of the Corletto Buick Agency. Leonard Corcia of the same agency testified relative to a subsequent transaction wherein appellant paid $4,200.00 cash for another car. Joe Bolden testified that he saw Thomas and Leroy Tapper in a parking lot near the scene on the early morning of February 26, 1958. Detective McCahan testified that appellant was taken into custody at 1:00 p.m. on March 24, 1958 at the Mercy-Douglas Hospital where he had recently undergone a hemorrhoid operation; that appellant was questioned until 7:30 p.m.,[1] at which time he made a verbal statement; that appellant was then taken to New Jersey to search for the money which appellant stated that he had buried; that appellant's statement was reduced to writing at

_____

[1] "There were breaks for meals, which he refused. There were breaks for him to talk to his wife, and so forth and so on".

1:30 a.m. on March 25, 1958, after which appellant was "slated" and taken to the Philadelphia General Hospital. He was given a hearing before a magistrate that morning. Appellant made a second written statement at 8:00 p.m. that evening, and a third written statement at 2:00 p.m. on March 27, 1958. The first written statement was to the effect that appellant committed the burglary alone. The second written statement implicated Arthur Davis, a janitor at the Savings and Loan, and also Leroy Tapper. The third written statement, similar to the second, was made in the presence of Davis and Tapper, and denied by them. These statements were received in evidence over objection. The Commonwealth also introduced in evidence a crowbar and a broken lock mentioned in the statements and found at the scene. The metal boxes and their contents were never recovered. Appellant took the stand in his own defense and testified that he was on parole for burglary. He admitted the possession of a large amount of currency, stating that he had "hit the numbers". He testified that he was innocent, that he was at home asleep on the morning in question, and that the statements were secured by force and coercion. Appellant's wife and his parole sponsor testified that appellant was in bed until 11:00 a.m. on the morning of February 26, 1958. In rebuttal, the Commonwealth introduced a note sent by appellant from the prison to Edna Clark.[2]

Appellant first contends that the evidence was insufficient to prove the corpus delicti. In *Commonwealth v. Ricci*, 177 Pa. Superior Ct. 556, 112 A. 2d

_____

[2] "Edna: I need help. I can't do anything in here. Can you contact Andy and see if he can help me in this case. I need to know what number hit on the 24th of February. If it can be arranged, say it hit for $12. My lawer is doing all he can to get me out. Lennie".

656, we re-stated the relevant legal principles as follows: "It is settled law that a confession may not be considered by the jury unless the corpus delicti has been proven . . . However . . . the definition of corpus delicti includes only (1) the occurrence of the specific kind of injury charged, and (2) somebody's criminality as the source of the injury. Proof of the accused's agency as the doer of the crime, while an essential requisite in order to convict, does not form part of the corpus delicti . . . Like any other fact, the corpus delicti may be proved by circumstantial evidence. All that the law requires is that it be proved beyond a reasonable doubt, and that doubt is for the jury". We are all of the opinion that the instant record, heretofore summarized, contains ample evidence to establish the corpus delicti.

Appellant's second contention is that, as a matter of law, his confessions were involuntary. He concedes "that the mere fact that he gave these confessions while in police custody does not in itself invalidate them. He also realizes that the mere fact he was not represented by counsel at the time and the fact that he was not warned of his privilege against self-incrimination are not in themselves sufficient reason to invalidate his confessions". However, he argues that these factors must be "considered along with the prolonged questioning, the defendant's physical condition, the variance of the police from established legal practice, and other facts in the case". It is of course true that, if evidence of will-destroying influences exerted upon the confessor is undisputed, the inadmissibility of the confession presents a question of law for summary disposition by the trial court: *Commonwealth v. Bryant*, 367 Pa. 135, 79 A. 2d 193. However, as in the *Bryant* case, the question whether a particular confession is less than voluntary ordinarily depends on issues of fact which are for

the jury to resolve. See *Commonwealth v. Narr*, 173 Pa. Superior Ct. 148, 96 A. 2d 155; *Commonwealth v. Godfrey*, 177 Pa. Superior Ct. 640, 112 A. 2d 434; *Commonwealth, v. Lockard*, 325 Pa. 56, 188 A. 755; *Commonwealth v. Simmons*, 361 Pa. 391, 65 A. 2d 353; *Commonwealth v. Ballem*, 386 Pa. 20, 123 A. 2d 728. We deem it unnecessary to recite in detail the opposing testimony on this issue. Suffice it to say that the record clearly discloses a definite conflict of evidence, and the question was properly submitted to the jury.[3]

Appellant's third contention is that it is illegal for police officers to take into custody and detain a suspect for purposes of investigation without obtaining a warrant and according him an immediate hearing before a magistrate. He cites no supporting authority. We answer this contention in the following language of the distinguished trial judge, now a Justice of our Supreme Court: "This has never been the law. So long as the law allows a suspect to be linked to the crime by his own confession, once the corpus delicti has been proved, it must be its policy to allow the police to question him before anything else is done. There

---

[3] "However, there they [the statements] are, and the most important question in the case arises as to whether they are voluntary. They are not worth the paper they are written on if they are not voluntary. If they were beaten out of Thomas, if the police coerced him, threatened him, whether by physical or by mental torture, these confessions would not be worth anything—obviously. That's true in any case. To be worthwhile as a confession, the confessor must say, 'This is what happened. I tell you freely of my own free will, I am not afraid, I am glad to get it off my chest'. Then and only then does a confession count, whereas if it is beaten out of him, if he was coerced, then it is not the confessor's act, it is the will of another enforced upon him so that the other is speaking through the confessor's mouth and it is not a confession. So if it is coerced, then of course you must forget about these statements. On the other hand, if they were voluntary, freely given, then you may accept them, and remember all that was in them".

may be no other way, or reason, to take him before a magistrate at all. The law does not require that the only evidence available to the Commonwealth must be secured from other sources than the defendant. Due process concerns the abuse, not the use, of legal procedures. This defendant was in fact taken before a magistrate within twenty-four hours of his being taken for questioning".

Appellant's fourth and final contention relates to an alleged error in the charge. The excerpt of which appellant complains is set forth in the footnote.[4] Only a general exception was taken. See *Commonwealth v. Tonty*, 178 Pa. Superior Ct. 447, 115 A. 2d 833. It is argued that a person charged with crime is not required to explain anything, and that it is the Commonwealth's obligation to prove guilt. See *Commonwealth v. Clinton*, 391 Pa. 212, 137 A. 2d 463. However, the excerpt under attack referred to the explanation which appellant himself offered as to the source of the money. We find no error in the charge.

Judgments affirmed.

---

[4] "In addition to that, in order to explain why he had so much money, he said he had successfully hit the numbers. Now, if that is the situation, if you accept that, then that is an explanation for why he had so much money and you could accept it in the place of the idea that he had robbed the bank. Either he hit the numbers or he robbed the bank. There is nothing else in the case, he has offered nothing else as an explanation for it. Which do you think is supported by the evidence and is the real and accurate story?"