## STATE OF CONNECTICUT *v.* CHARLES P. MACE

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. MV 1-33774

Argued February 15—decided April 22, 1965

*Walter L. Burrows, Jr.,* of South Norwalk, for the appellant (defendant).

*George F. Carroll, Jr.,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J. After a trial to the court, the defendant was convicted of reckless driving in violation of

§ 14-222 of the General Statutes and of evading responsibility in the operation of a motor vehicle in violation of § 14-224. He has appealed from the judgment, assigning error in the denial of his motion to dismiss the information, in certain rulings on evidence, and in the conclusion that upon all the evidence he was guilty of the crimes charged beyond a reasonable doubt. Since the denial of a motion to dismiss is not properly assignable as error, we will not consider the first assignment of error. See *State* v. *Anderson,* 152 Conn. 196, 198. In support of the last assignment of error, the defendant has filed the evidence. Practice Book § 995. We shall take up the counts charged in the information in their inverse order.

Philip Codey, an eyewitness, testified on behalf of the state substantially as follows: On October 11, 1964, shortly before 6 p.m., he was sitting on the front step of his home, which is situated on the westerly side of Main Street in Norwalk. Main Street runs, generally, in a northerly and southerly direction. He saw someone operating a blue white-top Chevrolet convertible automobile, traveling in a northerly direction in the northbound lane on Main Street, and suddenly, without any warning, the car cut diagonally across the highway into the southbound lane and was headed directly toward Codey. He was forced to make a run for his life in order to avoid being run down. He saw the Chevrolet convertible car crash into the left-hand side of a station wagon which was parked on the westerly side of Main Street, facing in a southerly direction. He continued to observe the car, the driver of which made no effort at all to stop, until it disappeared out of sight a few blocks away from the point of the crash. The impact caused extensive damage to the entire left-hand side of the parked vehicle. Codey was unable to identify the operator

of the machine. "To be truthful," he testified, "I don't know whether it was a man, woman or boy, or what because it happened so quickly. I wouldn't know who was driving."

Within a matter of a few minutes, the Chevrolet convertible was spotted by the police in a parking lot, near Eddie's Bar on Main Street in Norwalk, about half of a mile from the scene of the accident. It was badly damaged. Its entire left-hand side from fender to fender had raked another automobile. All the chrome on the left side was ripped off. Portions of the chrome of the convertible were found on the hood and roof of the parked station wagon.

When the police arrived at the parking lot near Eddie's Bar, the defendant was standing at the side of the damaged vehicle. Sergeant Lee Smith of the Norwalk police department, one of the investigating officers, testified that "he [the defendant] said he was driving the car and that he didn't own the car; it belonged to a fellow named Hyatt; [he had] taken the car without the owner's permission." Officer Julian Lee, Jr., also a member of the Norwalk police department, testified, without objection, that "he [the defendant] was hollering to Mr. Hyatt, 'I was driving the car.' He was shouting in a loud voice and he was saying, 'Don't say anything; I was driving the car. I stole your car.'" The defendant admitted to Officer Lee that he failed to stop after the crash because "he became nervous and . . . in his fright he drove away; he didn't stop." The defendant chose to take the stand and offered testimony in his own behalf. He admitted he told the police officers that he was the operator of the Chevrolet convertible car and had struck the parked station wagon. He did so, according to his own testimony, to protect Hyatt "because he [Hyatt]

had a few drinks." On the witness stand, for the first time, he denied he drove Hyatt's car at the time of the crash.

The defendant did not deny either during the course of the trial or on this appeal that someone operating the Chevrolet convertible car committed the crime of evading responsibility in the operation of a motor vehicle in violation of § 14-224.[1] His principal, if not sole, contention in the court below and on appeal was that the evidence of his operation was not legally sufficient to support the conviction, that is to say, there was no other evidence, apart from his admissions, of identification connecting him with the crimes charged. We have already decided the precise point raised on this appeal. In *State* v. *Berkowitz*, 24 Conn. Sup. 112, 1 Conn. Cir. Ct. 439, immediately after a smashup in which a passenger in a car received injuries resulting in her death, the defendant, upon his own initiative, approached the investigating police officer and asked: "Is this woman going to die?" The officer replied: "I don't know." The defendant continued: "Please, I have to know because I was driving the car that hit this car in the rear end." We held (p. 118) that the "[i]dentity of the actor is not a necessary part of the corpus delicti [citing cases]." And we added (p. 119): "The authorities make it quite clear that the state was not required to establish the identity of the operator by any evidence apart from his admissions." We hold that the defendant's admissions in this case were no part of the corpus delicti and the objections to their

---

[1] Support may be found in the transcript (p. 44): "The court: Well, you admit that the state has made out a crime having been committed in so far as the motor vehicle violation is concerned, that the car ran into the parked car and didn't stop, violated one of our traffic laws. Mr. DiScala [defendant's counsel]: I would admit that."

admission into evidence were properly overruled.[2]
See 7 Wigmore, Evidence (3d Ed.) § 2072, p. 402.

But apart from the legal propositions raised by
the defendant, as we view this case the determina-
tive issue turned almost entirely on the question
of credibility. See *Setaro Motors, Inc.* v. *Intelisano,*
151 Conn. 590, 591. The credibility of witnesses
was the trial court's responsibility. *Banks* v. *Adel-
man,* 144 Conn. 176, 179. Hyatt, before taking the
stand as a witness for the state, was advised of his
constitutional rights. He chose to testify. Thus,
the trial court had the opportunity and advantage
of considering and appraising the testimony of the
state's witnesses, including that of Hyatt, as well
as the testimony of the defendant. "The credibility

---

[2] The defendant argued that his admissions were inadmissible
upon the ground that the state failed to offer sufficient preliminary
proof of the corpus delicti under such cases as *State* v. *LaLouche,*
116 Conn. 691, 693; *State* v. *Skinner,* 132 Conn. 163, 166; *State* v.
*Guastamachio,* 137 Conn. 179, 182, and *State* v. *Doucette,* 147 Conn.
95, 99. He has apparently overlooked the very recent case of *State*
v. *Tillman,* 152 Conn. 15, decided within the last year, in which
Chief Justice King, speaking for a unanimous court, came to the
conclusion (p. 20) that "complications and difficulties in the applica-
tion of our corroboration rule largely stem from our present defini-
tion of corpus delicti and dictate its abandonment." The court
adopted the Wigmore definition of corpus delicti. "Under the
Wigmore definition," said the court (p. 20), "the corpus delicti
consists of the occurrence of the specific kind of loss or injury
embraced in the crime charged." See 7 Wigmore, Evidence (3d Ed.)
§ 2072; note, 39 Conn. B.J. 130. "[A]ppellant's counsel has entirely
misconceived the limits of the corpus delicti. As applied to this
case, the corpus delicti consists in a motor vehicle operated by some
person, who, knowing . . . that injury has been caused to a person
or property by said motor vehicle, and that such person so operating
such motor vehicle leaves the place of injury or accident without
stopping, etc. When the above facts have been proven by competent
evidence the corpus delicti is made out, and the question of the
identity of the person is separate and distinct, and may be shown by
any competent evidence, including a confession [sic] of the party
charged with the offense." *Layfield* v. *State,* 27 Ala. App. 437, 438;
*Teague* v. *State,* 160 Tex. Crim. 532; *State* v. *Douglas,* 102 N.H. 525;
*State* v. *Jerke,* 73 S.D. 64; *People* v. *Gavurnik,* 2 Ill. 2d 190, 196.

of the testimony is peculiarly for the trial court in such a case and, with its opportunity to observe the witnesses on the stand, its conclusion rarely may be disturbed." *State* v. *Chuchelow,* 131 Conn. 82, 83. The record amply sustains the trial court's conclusion that the defendant was guilty beyond a reasonable doubt of evading responsibility in the operation of a motor vehicle within the meaning of the statute.

The trial court's conclusion that reckless driving was also established was without sufficient evidential basis and could only have resulted from guesswork. See *Palmieri* v. *Macero,* 146 Conn. 705, 708. In *Mooney* v. *Wabrek,* 129 Conn. 302, 308, the court said: "Recklessness is a state of consciousness with reference to the consequences of one's acts. . . . It 'requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man,' and the actor 'must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent.' . . . It is 'more than negligence, more than gross negligence.' . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." See 8 Blashfield, Automobile Law and Practice (Perm. Ed.) § 5368. "The core of the offense of reckless driving lies not in the act of operating a motor vehicle, but in the manner and circumstances of its operation. The mere occurrence of an accident does not give rise to an inference of reckless driving, and something more than an error of judgment is required to justify a conviction for

that offense." 7 Am. Jur. 2d 816, Automobiles and Highway Traffic, § 264; note, 52 A.L.R.2d 1337, 1343.

We have no way of determining on the record whether the erratic course which the car pursued was attributable to mechanical defects in the automobile or other circumstances beyond the control of the operator. See *People* v. *Thompson,* 41 Cal. App. 2d 965, 968. He might have been confronted by a sudden emergency not caused by his own negligence, or he could have blacked out momentarily from an attack of sudden illness. See *Palmieri* v. *Macera,* supra, 707. He may have suffered a momentary lapse of judgment or responded to impulsive inadvertence. See *State* v. *Egidio,* 24 Conn. Sup. 108, 111, 1 Conn. Cir. Ct. 435, 438. In the circumstances of this case and upon a careful consideration of the record, we are constrained to hold that the evidence leaves the case in conjecture; hence, the defendant was not shown to have been guilty of reckless driving within the meaning of the statute.

There is no error as to the second count; as to the first count, there is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty.

In this opinion KOSICKI and CICALA, Js., concurred.