490 S.E.2d 613

**CITY OF EASLEY, Respondent,**

v.

**Steven Dale PORTMAN, Appellant.**

No. 2698.

Court of Appeals of South Carolina.

Heard June 4, 1997.

Decided July 21, 1997.

Rehearing Denied Sept. 3, 1997.

594

O.W. Bannister, Jr., of Hill, Wyatt, Bannister & Brown, Greenville, for Appellant.

G. Edward Welmaker, of Acker, Welmaker, & Smith, Pickens, for respondent.

GOOLSBY, Judge.

In this driving under the influence of intoxicating liquors (DUI) case, which was prosecuted in the municipal court of the City of Easley, the appellant Steven Dale Portman ques-

tions whether the State established the *corpus delicti* of the offense so as to permit the admission into evidence of his statement to the investigating officer that he drove a motor vehicle and was drunk. The jury found Portman guilty. The circuit court affirmed his conviction. We do so as well.

As a result of a call received approximately thirteen minutes earlier, Officer Ron Winegard arrived at the scene of an accident involving a Ford Bronco. Because the vehicle, which rested against a tree, felt warm to his touch and he could still smell the tires, Winegard concluded the accident had occurred within a few minutes of his arrival at the accident scene. Several people were gathered at the accident scene, including Cynthia Gilstrap, the vehicle's registered owner, and Portman. Portman, who smelled of alcohol, stood at the back of the vehicle, his head resting against the outside-mounted spare tire and his hands held behind his back.

When Winegard asked Portman what was going on, Portman responded, "I was driving the vehicle. I'm drunk, take me to jail." Winegard then asked Portman how much he had had to drink, and Portman answered, "I've had four or five—just take me to jail." Winegard arrested Portman, charging him with DUI.

At trial Winegard testified that Portman's speech at that time was slurred and that he could determine by the manner in which the Bronco had left the road that its operator had been impaired and that it could not have been driven properly. He believed Portman was under the influence of alcohol at the time of arrest. Once at the jail, Portman refused to submit to a breathalyzer examination.

■ In a criminal case, a conviction cannot be based solely on the defendant's uncorroborated extra-judicial confession. *State v. Williams*, 321 S.C. 381, 468 S.E.2d 656 (1996). The State must offer some proof of the *corpus delicti* of the particular offense for which the defendant is charged to authorize admission of the confession of the defendant. *State v. Brown*, 103 S.C. 437, 88 S.E. 21 (1916); *cf. State v. Edwards*, 173 S.C. 161, 175 S.E. 277 (1934) (the rule barring evidence of the defendant's confession absent proof of the *corpus delicti* has no application to admissions against interest). Direct evidence of the *corpus delicti*, however, is not

required. *State v. Speights,* 263 S.C. 127, 208 S.E.2d 43 (1974). Circumstantial evidence will do. *Id.* If there is any evidence tending to establish the *corpus delicti* of the offense charged against the accused, then it is the duty of the trial court to submit the question of whether the offense occurred to the jury. *Edwards,* 173 S.C. at 167, 175 S.E. at 278. Independent proof of the defendant's identity as the guilty party is not required to prove the *corpus delicti.* JOHN W. STRONG, McCORMICK ON EVIDENCE § 145, at 557 (4th ed. 1997).

█ In a DUI case, as this court recently pointed out in both *State v. Osborne,* 321 S.C. 196, 467 S.E.2d 454 (Ct.App. 1996), *cert. granted,* (April 2, 1997), and in *State v. Townsend,* 321 S.C. 55, 467 S.E.2d 138 (Ct.App.1996), the *corpus delicti* of the offense of DUI consists of the following three elements: (1) driving a vehicle; (2) within this State; and (3) while under the influence of intoxicating liquors, drugs, or any other substance of like character. As can be readily seen, therefore, evidence showing the accused in a DUI case to be the driver of the vehicle is unnecessary to the determination of whether the State sufficiently proved the *corpus delicti.* All that the first element requires is that the State sufficiently prove that *someone* drove the automobile. *State v. Stimmel,* 800 S.W.2d 156 (Mo.Ct.App.1990); *see State v. Knoefler,* 563 P.2d 175, 176 (Utah 1977) (DUI case wherein the court noted "the connection of the accused with the crime need not be proven to establish the *corpus delicti*"). In sum, then, the *corpus delicti* of DUI consists of evidence that someone operated a motor vehicle in South Carolina while under the influence of intoxicating liquors, drugs, or like substances. *See State v. Sheppard,* 248 S.C. 464, 466, 150 S.E.2d 916, 917 (1966) ("the act of operating a motor vehicle with impaired faculties is the gravamen" of a DUI offense).

█ Here, we think the following circumstances constituted sufficient evidence to establish the *corpus delicti* of the offense of DUI: the Bronco had left the road; it rested up against a tree; the manner in which the Bronco had left the road indicated the driver's operation of the vehicle had been somehow impaired; Portman rested his head against the vehicle; he smelled of alcohol; he slurred his speech, a characteristic

associated with one who is intoxicated; and the investigating officer believed Portman was under the influence of alcohol. The admission, therefore, of Portman's statement admitting he had been driving the Bronco and was drunk did not constitute error.

Our opinion finds support in the following cases: *See Townsend,* 321 S.C. at 57–58, 467 S.E.2d at 140–41 (in which the court of appeals held that the *corpus delicti* of the offense of DUI was established by evidence showing the defendant was found at the scene of a one-car accident, smelled of alcohol, failed a field sobriety test, and was found to have a .21 per cent blood alcohol level when administered a breathalyzer test); *State v. White,* 311 S.C. 289, 428 S.E.2d 740 (Ct.App. 1993) (a felony DUI case where the court of appeals held proof of the *corpus delicti* was established by evidence showing the defendant, who tested positive for valium and alcohol was found staggering along an interstate highway with a "road rash" on his hand, bleeding, and smelling of alcohol, within a few hundred yards of a single-car accident in which the car had left the road, crossed the median, slid down the road, and gone down an embankment into the woods where it hit a tree, and where the court of appeals upheld the admission into evidence of his statements that he had been the driver of the car, notwithstanding officers found a body lying three or four feet from the driver's side of the car); *cf. State v. Gilliam,* 270 S.C. 345, 242 S.E.2d 410 (1978) (in which the supreme court upheld a conviction in a DUI case where the defendant was found alone on the passenger side of a wrecked automobile that had gone down a highway embankment, the defendant smelled of alcohol and appeared to be under the influence, an open bottle of an alcoholic beverage was found in the car, and the defendant admitted he had been the driver of the car at the time of the accident).[1]

---

1. Two cases from other jurisdictions with very similar fact patterns support our holding: *See State v. Douglas,* 102 N.H. 525, 162 A.2d 159 (1960) (DUI case in which the evidence showed a police officer went to the scene of a one-vehicle accident, found a vehicle off the highway against a telephone pole, saw a number of people standing around the scene, including the defendant and a man named Lachenal, asked who was driving and the defendant told the officer it was he while Lachenal said nothing, and determined the defendant was under the influence of intoxicating liquor and in which the court held the evidence established

The case principally relied on by Portman is *State v. Osborne,* 321 S.C. 196, 467 S.E.2d 454 (Ct.App.1996), *cert. granted,* (April 2, 1997). *Osborne* involved a single-car accident and a challenge to the admission into evidence of the defendant's confession. He argued the State did not prove the *corpus delicti* of the offense of DUI. The court of appeals agreed with the defendant, holding the only evidentiary facts offered to establish the *corpus delicti* were (1) the defendant's car had been in an accident; (2) the hood of the car was still warm when the officer arrived on the accident scene; (3) the defendant registered .14 per cent on the breathalyzer three hours *after* the accident; and (4) the defendant tried to file a false stolen-vehicle report.

*Osborne,* however, does not help Portman for the following reasons. In contrast to the present case, the investigating officer in *Osborne* did not find anyone drunk at or near the wrecked vehicle. Moreover, although the vehicle had been in an accident, the officer did not testify he had any reason to believe the accident had resulted from faulty driving. The officer left the scene to search for the defendant and did not locate him until two and one-half hours later, when the defendant was discovered visibly intoxicated at a place called the Hot Spot. This court concluded a guilty verdict on the evidence presented would require the fact finder to "impermissibly speculate as to facts not in existence." *Osborne,* 321 S.C. at 196, 467 S.E.2d at 457. In the present case, Officer Winegard's testimony about his observations of the wrecked vehicle, the accident scene, and Portman's behavior sufficient-

---

the *corpus delicti,* notwithstanding Lachenal testified at trial he was the operator of the vehicle at the time of the accident); *State v. Stimmel,* 800 S.W.2d 156 (Mo.Ct.App.1990) (DUI case in which the evidence showed a trooper arrived on the scene of a one-vehicle accident, saw a vehicle at the edge of the westbound lane facing eastward with its rear end in the median and tire tracks leading from the eastbound lane, determined the vehicle's driver was heading eastbound when the vehicle left that lane, traveled into the median, and came to a stop, observed the defendant standing next to the car while two other men, who shortly left in separate vehicles, stood off to one side, noticed the defendant smelled of alcohol and his face was flushed and speech slurred, and was told by the defendant he was the driver of the car and in which the court held the circumstantial evidence established the *corpus delicti).*

ly established the existence of facts extrinsic to any inculpatory statements by Portman to support a guilty verdict.

**AFFIRMED.**

ANDERSON, J., concurs in result only in a separate opinion.

HOWELL, C.J., dissents in a separate opinion.

ANDERSON, Judge (concurring in result only):

I concur in the result reached, but write separately to express my views thereon. In my opinion, the trial judge correctly determined there was sufficient circumstantial evidence of the *corpus delicti* to submit the charge of driving under the influence (DUI) to the jury.

## I. *SOUTH CAROLINA DUI LAW*

Portman was charged with violating S.C.Code Ann. § 56-5-2930 (1991), which provides in pertinent part "[i]t is unlawful for any person ... who is under the influence of intoxicating liquors, narcotic drugs, barbiturates, paraldehydes or drugs, herbs or any other substance of like character, whether synthetic or natural, to drive any vehicle within this State." The act of operating a motor vehicle with impaired faculties is the gravamen of the offense. *State v. Sheppard*, 248 S.C. 464, 150 S.E.2d 916 (1966).

The *corpus delicti* of DUI therefore consists of (1) driving a vehicle; (2) within South Carolina; (3) while under the influence of intoxicating liquors, drugs, or any other substance of like character. *State v. Townsend*, 321 S.C. 55, 467 S.E.2d 138 (Ct.App.1996), *cert. denied* (Sept. 5, 1996).

In *Townsend*, this Court concluded the State had presented sufficient evidence of the *corpus delicti* without regard to the defendant's confession, where the State established the defendant, who smelled like alcohol and failed a field sobriety test, was at the scene where the defendant's car had been wrecked. The car struck a power pole before crashing into a bank building. Defendant appeared intoxicated at the scene, and a breathalyzer test showed his blood alcohol content to be .21%. Although Townsend admitted driving the vehicle, he asserted

he became intoxicated *after* the accident. We concluded the above testimony was sufficient circumstantial evidence to submit the case to the jury. In addition, defendant was identified by firefighters during the trial as the driver.

In *State v. Gilliam*, 270 S.C. 345, 242 S.E.2d 410 (1978), our Supreme Court found there was sufficient evidence to present the charge of DUI to the jury where the defendant was found alone on the passenger side of a wrecked vehicle which had gone down an embankment off the right-hand side of the highway. An open bottle of alcohol was found in the vehicle. A tow truck operator who arrived 15 minutes after the accident testified the defendant smelled of alcohol and appeared to be intoxicated. The defendant was incoherent when he was taken to the hospital, and he admitted he was driving when the accident occurred. The court found this evidence "amply" supported the submission of the case to the jury.

In contrast, in *State v. Osborne*, 321 S.C. 196, 467 S.E.2d 454 (Ct.App.1996), *cert. granted* (Apr. 2, 1997), we found there was insufficient evidence presented of the *corpus delicti* of the offense of DUI. A trooper discovered an abandoned vehicle at 11:17 p.m. that had been involved in a one-car accident. The hood was still warm. Approximately one and a half hours later, the trooper met Osborne at a nightclub. Osborne had called to report his vehicle was stolen. Osborne appeared intoxicated. Osborne admitted to the trooper that he had wrecked the car. Upon returning to the scene of the accident, Osborne told a second trooper the car had been stolen. He gave the car keys to one of the troopers. Osborne stated he did not drink after the accident.

In *State v. White*, 311 S.C. 289, 428 S.E.2d 740 (Ct.App. 1993), a case involving felony DUI, we found the *corpus delicti* of the offense had been established, and we noted the question whether the defendant was the driver of the vehicle was a matter for the jury to determine. A trooper found White staggering along the interstate. White was wearing a torn, bloodstained shirt, was bleeding from the shoulder, and had a strong odor of alcohol about him. He initially told the trooper he had been in a fight. However, he told an emergency room nurse he had been hit by a truck he had tried to flag down after something happened to the car he was driving.

Three hours later, White told the same nurse he had been driving and had been in an accident. He said he was afraid his passenger was dead. White told a trooper summoned to the hospital that he had been driving a car when a truck either struck him or ran him off the road. He expressed concern his passenger was out there with the vehicle. White's car was found by a passerby during the night. It had traveled down an embankment into the woods. The passenger was dead, and his body lay three or four feet from the driver's side of the car. In the morning, White told the troopers he had been the driver of the vehicle, he had been drinking and was going around 75 to 80 m.p.h. when he lost control when a truck came into his lane. When White was informed his passenger was dead, White screamed, "Oh, my Lord, ... I've killed him. I've killed him." Regarding White's assertion the state had failed to establish the *corpus delicti* of the offense, this Court stated:

> This assertion has no merit. Separate and apart from White's inculpatory statements, the evidence outlined above, when viewed in the light most favorable to the State ... established proof aliunde of the corpus delicti, albeit circumstantially for the most part....
>
> The precise questions of whether White drove the motor vehicle in question while under the influence of alcohol or drugs, whether he either did an act forbidden by law or neglected a duty imposed by law, and whether either his act or neglect caused [the victim's] death, were matters properly left to the jury. *See State v. Morgan,* 282 S.C. 409, 319 S.E.2d 335 (1984) (in a prosecution for driving a motor vehicle while under the influence of alcohol or drugs, the questions of whether a defendant was under the influence and whether he was the driver of the vehicle in question presented issues for the jury).

*White,* 311 S.C. at 295–96, 428 S.E.2d at 744.

## II. *CORPUS DELICTI*

The *corpus delicti* of a crime is the body, foundation, or substance ⸱ of the crime, which ordinarily includes two elements: the act and the criminal agency of the act. Black's Law Dictionary 344 (6th ed. 1990). In a derivative sense, *corpus delicti* is the objective proof or substantial fact that a

crime has been committed. *Id.* It is a combination of two Latin words: *"corpus,"* meaning a body or physical substance, and *"delictum,"* meaning a wrong, tort, injury or offense. *Id.* When applied to any particular offense, the term *corpus delicti* means the specific crime has actually been committed. *State v. Teal,* 225 S.C. 472, 82 S.E.2d 787 (1954).

The efficacy of the doctrine of *corpus delicti* is explicated in *State v. Williams,* 321 S.C. 381, 468 S.E.2d 656 (1996). The *Williams* Court stated:

> A conviction cannot be had on the extrajudicial confessions of the defendant unless corroborated by proof aliunde of the corpus delicti. *State v. Blocker,* 205 S.C. 303, 31 S.E.2d 908 (1944).... Moreover, if there is any evidence tending to establish the corpus delicti, then it is the duty of the trial court to pass that question on to the jury. *State v. Blocker, supra.*

*Williams,* 321 S.C. at 384–85, 468 S.E.2d at 657–58.

The State must produce proof *aliunde* of the *corpus delicti* aside from the extrajudicial confession of the defendant. *Brown v. State,* 307 S.C. 465, 415 S.E.2d 811 (1992). *See also State v. Teal,* 225 S.C. 472, 82 S.E.2d 787 (1954) (conviction based on confession cannot stand unless corroborated by proof *aliunde* of *corpus delicti* ). Before a defendant can be required to present a defense, the State must establish some proof of the *corpus delicti. State v. Brown,* 103 S.C. 437, 88 S.E. 21 (1916); *State v. Townsend,* 321 S.C. 55, 467 S.E.2d 138 (Ct.App.1996). The prosecution must show the actual commission by someone of the particular offense charged. *See State v. Brown, supra.* If there is no evidence to prove the *corpus delicti,* the defendant is entitled to a directed verdict of not guilty. *Id. See also State v. Epes,* 209 S.C. 246, 39 S.E.2d 769 (1946) (if there is no proof of *corpus delicti,* defendant is entitled as matter of law to directed verdict).

It is well established in the courts of the American judicial system that a criminal defendant cannot be convicted on the basis of his extrajudicial confession alone. Carolyn P. MacWilliam, Annotation, *Sufficiency of Corroboration of Confession for Purpose of Establishing Corpus Delicti as Question of Law or Fact,* 33 A.L.R.5th 571 (1995). The requirement that the *corpus delicti* be sufficiently corroborated by

independent evidence is rooted in the premise that the examination of this additional evidence will avert the danger that a crime was confessed when in fact no such crime was committed. *Id.* Thus, the rule exists to prevent the conviction of an innocent person. *Id.*

## III. *IDENTITY NOT ELEMENT OF CORPUS DELICTI*

As a general rule, the connection of the accused with the crime, or the identity of its perpetrator, is not an element of the *corpus delicti.* 23 C.J.S. *Criminal Law* § 1110 (1989). "[T]he *corpus delicti* embraces the fact that a crime has been committed by someone—i.e., that somebody did the required act or omission with the required mental fault, under the required (if any) attendant circumstances, and producing the required (if any) harmful consequence, without embracing the further fact (needed for conviction) that the defendant was the one who did or omitted that act or was otherwise responsible therefor." Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law,* § 1.4(b), at 18–19 (2d ed. 1986). *See also Jenkins v. State,* 401 A.2d 83 (Del.Super.Ct.1979) (term *corpus delicti* usually does not include perpetrator's identity; otherwise, *corpus delicti* would be synonymous with whole of charge); *Davis v. State,* 582 So.2d 695 (Fla.Dist.Ct.App.1991) (causal connection between defendant and crime is not required to be shown to establish *corpus delicti* for purpose of determining admissibility of confession).

The identity of the actor charged with a criminal offense is not a necessary part of the *corpus delicti. See, e.g., State v. Mace,* 3 Conn.Cir.Ct. 228, 210 A.2d 675 (1965). *See also United States v. Charpentier,* 438 F.2d 721 (10th Cir.1971) (identification of accused as person who committed crime is not part of *corpus delicti* ); *State v. Hawkins,* 165 S.W.2d 644 (Mo.1942) (*corpus delicti* consists of act and of criminal agency of act, other than confession of accused, and proof of accused's identity or agency as criminal is not required); *State v. Sinovich,* 329 Mo. 909, 46 S.W.2d 877 (1931) (proof of *corpus delicti* means merely proof that crime has been committed; proof of defendant's connection therewith ordinarily being no part of *corpus delicti* ); *Reyes v. State,* 151 Neb. 636, 38 N.W.2d 539 (1949) (*corpus delicti* is body or substance of crime and in its primary sense it is fact that crime has been

committed without regard to identity of person committing it); *Commonwealth v. Thomas,* 189 Pa.Super. 25, 149 A.2d 165 (1959) (*corpus delicti* consists of occurrence of specific kind of injury charged, and someone's criminality as source of such injury, and proof of accused's agency as doer of crime does not form part of *corpus delicti,* but is essential requisite in order to convict). *See generally* VII John Henry Wigmore, *A Treatise on the Anglo–American System of Evidence in Trials at Common Law* § 2072 (3d ed. 1940).

"To establish a corpus delicti, the government need only prove that a crime has been committed. Identifying the defendant as the perpetrator of the crime is not required...." 29A Am.Jur.2d *Evidence* § 753 (1994). *See, e.g., State v. Williams,* 321 S.C. 381, 468 S.E.2d 656 (1996) (the *corpus delicti* of arson consists of showing the property was burned due to the willful act of some person); *State v. Blocker,* 205 S.C. 303, 31 S.E.2d 908 (1944) (without a crime being established, there could be no guilt either in the accused or in anyone else). *Accord California v. Komatsu,* 212 Cal.App.3d Supp. 1, 261 Cal.Rptr. 681 (Super.Ct.1989) (*corpus delicti* does not include identity or mental state of perpetrator); *Missouri v. Hill,* 812 S.W.2d 204 (Mo.Ct.App.1991) (the *corpus delicti* of driving while intoxicated consists of evidence someone operated a motor vehicle while intoxicated); *Pennsylvania v. Zelosko,* 454 Pa.Super. 635, 686 A.2d 825 (1996) (in order to establish *corpus delicti* of driving under influence, state need only show someone operated motor vehicle while under influence of alcohol).

## IV. *PROOF OF CORPUS DELICTI*

Articulating the burden of proof efficacious in a *corpus delicti* analysis, the Supreme Court in *State v. Collington,* 259 S.C. 446, 192 S.E.2d 856 (1972), observed:

The *corpus delicti* in a homicide case must be established by the best proof obtainable, but direct and positive evidence is not essential and such may be proved by presumptive or circumstantial evidence when that is the best obtainable. In determining whether there was sufficient proof of the *corpus delicti,* we, of course, are not concerned with the weight of the evidence or the credibility of the witnesses,

but rather with whether there was sufficient evidence to go to the jury tending to prove the *corpus delicti* beyond a reasonable doubt.

*Collington,* 259 S.C. at 449, 192 S.E.2d at 857 (citations omitted).

While evidence of the *corpus delicti* must be established by the best proof attainable, direct and positive evidence is not essential. *State v. Speights,* 263 S.C. 127, 208 S.E.2d 43 (1974); *State v. Townsend,* 321 S.C. 55, 467 S.E.2d 138 (Ct. App.1996). *Corpus delicti* may be proven by circumstantial evidence. *State v. Owens,* 293 S.C. 161, 359 S.E.2d 275 (1987); *State v. Roof,* 196 S.C. 204, 12 S.E.2d 705 (1941). *See also State v. Martin,* 47 S.C. 67, 25 S.E. 113 (1896) (elements of crime constituting particular *corpus delicti* can be proven by circumstantial evidence). A case should be submitted to the jury if there is any substantial evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Wakefield,* 323 S.C. 189, 473 S.E.2d 831 (Ct.App.1996).

"Proof of *corpus delicti* is not a prerequisite to the admission of an extra-judicial confession of a defendant. If, however, *corpus delicti* is not proven and the sole evidence of guilt is a confession, a directed verdict in favor of the defendant is required." *State v. Williams,* 321 S.C. 381, 385 n. 2, 468 S.E.2d 656, 658 n. 2 (1996). On the other hand, if there is any evidence tending to establish the *corpus delicti,* the trial judge has a duty to submit the question to the jury. *Id.* The question as to whether there is any proof of the *corpus delicti* is one for the court; whereas, the sufficiency of the evidence is a question for the jury. *See State v. Brown,* 103 S.C. 437, 88 S.E. 21 (1916).

We note the standard for establishing the *corpus delicti,* whether there is any evidence the crime was committed, is therefore not as rigorous as the standard the State must meet to actually obtain a conviction, i.e., the State must establish the offense was committed by the defendant "beyond a reasonable doubt." *Cf. Arizona v. Villa,* 179 Ariz. 486, 880 P.2d 706 (Ct.App.1994) (*corpus delicti* need not be proven beyond reasonable doubt; only reasonable inference of *corpus delicti*

must exist before confession may be considered); *Illinois v. Chavez*, 285 Ill.App.3d 45, 220 Ill.Dec. 885, 674 N.E.2d 156 (1996) (state need not establish corpus delicti beyond a reasonable doubt in order to allow consideration of admission or confession; rather, standard is some independent evidence).

## V. *CONFESSION AS JUXTAPOSED TO ADMISSION*

Some courts make an exception to the *corpus delicti* rule for "admissions." *Davis v. State*, 582 So.2d 695 (Fla.Dist.Ct.App. 1991), enunciates with clarity the distinction between "confession" and "admission." The *Davis* court engages in an enlightening discussion of this facet of evidentiary proof of *corpus delicti:*

> It is perhaps appropriate to note at this point that not all extrajudicial statements against interest amount to "confessions," notwithstanding that some Florida courts as well as courts in other jurisdictions have, on occasion, used the words "confession" and "admission" interchangeably to describe such statements. In *Nelson v. State*, 372 So.2d 949 (Fla. 2d DCA 1979), the court, citing *Parrish v. State*, 90 Fla. 25, 105 So. 130 (1925), distinguished "confessions," which are complete acknowledgments of a criminal act, from "admissions," which are statements from which guilt may be inferred. While confessions are inadmissible until the State presents prima facie evidence of the corpus delicti, admissions are admissible as prima facie evidence of the corpus delicti.

*Davis*, 582 So.2d at 700.

A "confession," in the legal sense, is restricted to acknowledgement of guilt and does not apply to a mere statement of fact from which guilt may be inferred. *State v. Cunningham*, 275 S.C. 189, 268 S.E.2d 289 (1980); *State v. Miller*, 211 S.C. 306, 45 S.E.2d 23 (1947); *State v. Epes*, 209 S.C. 246, 39 S.E.2d 769 (1946). *See also State v. Morgan*, 282 S.C. 409, 319 S.E.2d 335 (1984) (statements made by defendant to effect he had been driving vehicle and had been using alcohol and marijuana, but not stating he was under the influence, did not amount to confession to offense of DUI).

In *State v. Owens*, 291 S.C. 116, 352 S.E.2d 474 (1987), our Supreme Court concluded:

While the State offered no evidence directly connecting Owens with the events at the Vereen home, there is evidence which connects him with the preparation of the ransom note. The note, in turn, states that Mr. Vereen was in the author's custody. This **extra-judicial admission against interest,** corroborated by other proof of the *corpus delicti,* is sufficient to support the conviction.

*Owens,* 291 S.C. at 118–19, 352 S.E.2d at 476 (emphasis added).

It is apodictic the *Owens* Court treated the statement emanating from the defendant as an "admission against interest." *Owens* does not answer the direct query as to whether an "admission against interest" is synonymous with a "confession." *Cf. People v. Cryder,* 90 Cal.App.2d 194, 202 P.2d 765 (1949) ("admission" is not synonym of "confession").

Black's Law Dictionary defines "confession" as a "voluntary statement made by a person charged with the commission of a crime ... wherein he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act or the share and participation which he had in it." Black's Law Dictionary 296 (1990).

According to Black's Law Dictionary, "admissions" are "statements by a party ... of the existence of a fact which is relevant to the cause of his adversary." *Id.* at 47. An "admission" is the avowal or acknowledgement of a fact or circumstance from which guilt may be inferred, tending only to prove the offense charged, but not amounting to a confession of guilt. *Pressley v. State,* 201 Ga. 267, 39 S.E.2d 478 (1946). An "admission against interest" is any statement made by or attributable to a party to an action which constitutes an admission against his interest and tends to establish or disprove any material fact in the case. *See Kellner v. Whaley,* 148 Neb. 259, 27 N.W.2d 183 (1947).

Black's distinguishes a "confession" from an "admission:" "A confession is a statement admitting or acknowledging all facts necessary for conviction of the crime. An admission, on the other hand, is an acknowledgement of a fact or facts tending to prove guilt which falls short of an acknowledgement of all essential elements of the crime." Black's Law Dictionary 297 (1990). The term "admission" is usually applied to

those matters of fact in criminal cases which do not involve criminal intent, while the term "confession" is generally restricted to acknowledgements of guilt. *Id.* at 48.

"Admissions" are distinguished from "confessions" in that the latter constitute full acknowledgements of guilt while the former are incriminating statements from which fewer than all elements of the crime can be inferred. *See State v. Trexler,* 316 N.C. 528, 342 S.E.2d 878 (1986). *See also Claxton v. City of Lynchburg,* 15 Va.App. 152, 421 S.E.2d 891 (1992) ("confession" is statement admitting or acknowledging all facts necessary for conviction of crime charged, while "admission" admits of facts tending to prove guilt but falling short of admission to all essential elements of crime); *Stowers v. State,* 205 Ga.App. 518, 422 S.E.2d 870 (1992) (defendant's statement in which he did not admit every essential element of charged offense constituted "admission," not "confession," and no corroboration thus was required). In an incriminating statement or "admission," only one or more facts entering into the criminal act are admitted, while in a "confession" the entire criminal act is confessed. *Burns v. State,* 188 Ga. 22, 2 S.E.2d 627 (1939).

In determining the necessity of corroboration, a distinction should be made between confessions of guilt and admissions of Incriminating facts. "A confession is the admission of guilt by the defendant of all the necessary elements of the crime of which he is charged, including the necessary acts and intent. An admission merely admits some fact which connects or tends to connect the defendant with the offense but not with all the elements of the crime." *State v. Masato Karumai,* 101 Utah 592, 126 P.2d 1047, 1052 (1942). In *Louette v. State,* 152 Fla. 495, 12 So.2d 168 (1943), the court concluded:

The term "confessions" has been held by some courts to embrace not only an express declaration of the accused that he is guilty of the crime charged, but also those admissions of fact on his part from which guilt may be inferred. However, the better rule, and the majority rule is that the term "confession" does not apply to a mere admission or declaration of an independent fact which tends to prove guilt or from which guilt may be inferred, and our decisions show that this distinction between confessions and inculpa-

tory admissions has been generally accepted and followed by this court.

*Louette,* 12 So.2d at 172 (citations omitted).

In *Burks v. State,* 589 So.2d 355 (Fla.Dist.Ct.App.1991), the court addressed a factual scenario similar to the one in the case *sub judice.* Burks was charged with DUI manslaughter after telling a police officer he was the driver of a truck involved in an accident with a motorcycle. Burks further stated he had been drinking heavily all evening. His blood alcohol registered .14%. After his conviction, Burks appealed contending the *corpus delicti* was not established prior to the court's admission into evidence of his statement he was the driver of the truck; i.e., there was no evidence, other than his statement, that placed him behind the wheel of the truck. The appellate court explained that the statement, to be a confession, must "acknowledge guilt of the crime charged." *Id.* at 357. The *Burks* court further held:

A confession leaves nothing to be determined, in that it is a declaration of his [defendant's] intentional participation in a criminal act.... An admission as applied to criminal law is something less than a confession, and is but an acknowledgement of some fact or circumstances which in itself is insufficient to authorize a conviction, and which tends only toward the proof of the ultimate fact of guilt.

In the case at bar, Burks' admission that he was the driver of the truck—before any arrest and before any charges were filed—was an admission against interest tending merely to establish one material fact and did not acknowledge guilt. The reason for the ... *corpus delicti* rule ... does not apply to admissions against interest where the law presumes that the one making the statement would not have done so unless the statement was true.

*Burks,* 589 So.2d at 357.

In *State v. Manzella,* 306 Or. 303, 759 P.2d 1078 (1988), the Oregon Supreme Court discussed the distinction between "confession" and "admission:"

The *"corpus delicti"* rule also emerged during this third period. English courts first began to recognize the rule during the early 1800's. The rule apparently arose in reaction to a few documented instances of false confessions.

However, it was applied sporadically and inconsistently in England, affording little guidance to courts and legislatures in the United States. Although the policy behind the rule has been the subject of extensive criticism, virtually every state in this country has adopted some version of it.

In its discussions of the rule, this court consistently has distinguished between "confessions" and "admissions." Most of those discussions were dicta. In at least one case, however, the distinction drawn between "admissions" and "confessions" supported the holding of the court.

*Manzella,* 759 P.2d at 1082–83 (citations omitted) (footnotes omitted).

My review of the authorities extant on the doctrine of *corpus delicti* convinces me South Carolina should analyze evidence emanating from a defendant via statements as to whether the testimony is an "admission against interest" or "confession." If the evidence is an "admission against interest," it would be admissible under the *corpus delicti* doctrine. On the other hand, if the testimony is in the nature of an "extrajudicial confession," the *corpus delicti* rule would prohibit the admission of the "extrajudicial confession."

## VI. *OTHER JURISDICTIONS*

In *Utah v. Knoefler,* 563 P.2d 175 (Utah 1977), the court held evidence that all three occupants of a wrecked automobile were injured and that all three smelled of alcohol was sufficient evidence to establish the crime of driving under the influence of intoxicants and inflicting bodily injury on another had occurred, independent of the defendant's admission of having driven the automobile at the time of the accident. The court observed that one of the three occupants had to be the driver, and with evidence that all three had been drinking, the injuries suffered were a result of someone's criminal conduct of driving under the influence of intoxicants. The court noted the effect of the driver's admission was to connect him to the crime, and the admission was not needed to establish a crime had been committed.

In *Oregon v. Smith,* 31 Or.App. 321, 570 P.2d 409 (1977), the court found circumstantial evidence sufficiently established the *corpus delicti* of DUI. An officer saw a vehicle on a lawn just

off a public street. Tire tracks in the snow led from the street to the vehicle. The defendant and two other persons were near the front of the vehicle, and the defendant was trying to use a jack to change a flat tire on the car. The hood of the car was warm, and the officer had been by a half hour earlier and the car was not there. The officer asked what the problem was, and the defendant replied he had driven the car on the lawn to change the tire. The officer concluded from talking to defendant and observing his actions that he was under the influence of alcohol.

The Court of Appeals of Oregon concluded:

In this case the evidence, aside from defendant's admission that he was driving, was circumstantial. The essence of defendant's argument is the "other proof" must establish someone drove the vehicle under the influence of intoxicating liquor before the jury can consider his incriminating statements that he was the driver. Since, he contends, there were three people around the car when the officer approached, the circumstantial evidence that defendant was the driver is not clear, cogent, unequivocal or convincing. Concededly the evidence does not exclude every reasonable hypothesis consistent with defendant not driving the car, however, as we view the ... rule regarding circumstantial evidence ..., it is sufficient to establish the corpus delicti. The vehicle had been recently driven on a public street as indicated by the tire tracks in the snow and the fact the vehicle was not in that location one-half hour earlier. The hood of the vehicle was still warm. Defendant was the registered owner of the car and indicated control of the vehicle and the situation in asking the officer for a tow and working with the jack to change the flat tire. The other two individuals were simply standing by the car; they said nothing and left the scene when defendant was arrested. In addition, there was substantial evidence defendant was under the influence of intoxicating liquor.

*Smith,* 570 P.2d at 411.

In *Missouri v. Stimmel,* 800 S.W.2d 156 (Mo.Ct.App.1990), the court found the *corpus delicti* of driving while intoxicated had been established where the officer testified that, when he arrived at the scene, he observed the defendant standing next

to a wrecked car while two other men were standing off to the side. The officer testified there were tire tracks leading to the car in the median, indicating someone had driven the car. The defendant had slurred speech, a flushed face, and the odor of alcohol. Further, the two other men drove off shortly after the officer arrived, from which the court stated it was inferable the defendant was driving the vehicle.

In another case from the Missouri Court of Appeals, *Missouri v. Tillman*, 823 S.W.2d 43 (Mo.Ct.App.1991), the court, relying on *Stimmel*, found there was adequate proof of the *corpus delicti*. There, a police chief saw a red Jeep crossing over into his lane. The Jeep's driver veered back into his own lane but overcorrected and drove off the right-hand side of the road. The Jeep rolled several times before catching on fire. Both of the occupants of the Jeep were ejected. The person furthest from the vehicle admitted to being the driver, and the chief noticed the odor of alcohol on both of the parties and in the vehicle. Several beer cans were lying within 15 to 20 feet of the Jeep. The occupant who identified himself as the driver also admitted he had been drinking and was found to have a blood alcohol content of .15%. The court held the defendant's statements he was the driver of the Jeep and he had been drinking "were corroborated by independent evidence of corresponding circumstances." *Id.* at 45.

In *Arizona ex rel. McDougall v. Superior Court*, 188 Ariz. 147, 933 P.2d 1215 (Ct.App.1996), the Arizona Court of Appeals held, in a case of first impression, evidence of drunk driving, improper control of a vehicle, and that either the husband or wife was driving was sufficient evidence of the *corpus delicti*, independent of the wife's admission of having been the driver, so as to support a charge of DUI. The court observed:

This case is one of first impression in Arizona because it addresses the corpus delicti doctrine in the context of DUI cases. Other jurisdictions have commented on this subject. In *State v. Knoefler*, 563 P.2d 175, 176 (Utah 1977), the Utah Supreme Court held that the state had provided sufficient independent evidence of the crime of DUI when the driver and another passenger at an accident scene appeared intoxicated, there was an "abundance of beer" in the vicinity of the wreck and the driver admitted to consuming alcohol.

The California Court of Appeals reached the same result in *People v. Ellena*, 67 Cal.App. 683, 228 P. 389, 391 (1924), where all three passengers in the front seat of a wrecked vehicle showed signs of intoxication.

Arizona requires proof of the corpus delicti independent of the defendant's confession. *Weis*, 92 Ariz. at 260, 375 P.2d at 739. However, this case presents no corpus delicti problems. The corpus or "body" of the DUI crime does in fact exist. Apart from the suspect's statements there is evidence of drunk driving, improper control of a vehicle, and evidence that either Mr. or Ms. Plummer was driving. The only persons in the cab of the pickup were Mr. and Ms. Plummer. Tranter and another officer testified that both showed signs of intoxication. Mr. Plummer told the officers that his wife had been drinking and was driving at the time of the collision. These facts alone constitute the corpus and also create at least a reasonable inference that some intoxicated person, possibly Ms. Plummer, was driving the truck when it struck the median.

*Arizona ex rel. McDougall*, 933 P.2d at 1217.

### CONCLUSION

The dissent would apply the rule of *corpus delicti* with dogmatic vengeance leaving no room for proof of *corpus delicti* by circumstantial evidence. The origin of *corpus delicti* reveals no application as contended by the dissent to the factual scenario articulated in this case. In light of the plethora of procedural protections granted defendants in modern criminal practice, the *corpus delicti* rule is supported by few practical or social policy considerations. Therefore, the rule of *corpus delicti* should be applied with circumspection. The linchpin of *corpus delicti* is an inquiry as to whether a crime has been committed by someone. The gravamen of *corpus delicti* does not focus on the individual defendant as the perpetrator of the crime or the sufficiency of the evidence to identify the defendant.

In my opinion, the *corpus delicti* of the offense of DUI was established in the case *sub judice*. Had Portman been the only person at the scene of the accident, it is clear from South Carolina precedent, *e.g., State v. Townsend*, 321 S.C. 55, 467

S.E.2d 138 (Ct.App.1996), that there would be sufficient proof of the *corpus delicti.* I do not believe this proof is extinguished merely because another person was at the scene who could have been the driver. Rather, based on *State v. White,* 311 S.C. 289, 428 S.E.2d 740 (Ct.App.1993), wherein this Court held the question whether the defendant or another person was the driver is a matter for the jury to determine as the factfinder, I believe it was for the jury to determine whether Portman was indeed the operator of the wrecked vehicle. Further, I find the reasoning in the decisions from other jurisdictions persuasive regarding the circumstantial evidence sufficient to establish the *corpus delicti* of a DUI offense. There was circumstantial evidence, independent of Portman's statements, that *someone* had operated a motor vehicle while under the influence. There was evidence of a recent wreck (the car was warm and the officer could smell the tires), there was a loss of control of the vehicle (it ran off the road and hit a tree), and Portman appeared intoxicated and was in close proximity to the vehicle at the scene of the accident. Thus, recognizing the difference between the evidence sufficient to sustain a conviction and the evidence sufficient to sustain a finding that the *corpus delicti* has been established, I believe there was sufficient evidence of the *corpus delicti.* Accordingly, I agree Portman's conviction should be affirmed.

Moreover, the statements emanating from Portman were quintessential "admissions" rather than "an extrajudicial confession." Concomitantly, the statements were admissible as "admissions" without violating the *corpus delicti* rule.

HOWELL, Chief Judge, dissenting:

I respectfully dissent. If the requirement that the State must establish the *corpus delicti* in a DUI case has any meaning at all, then this case should be reversed.

Before a defendant in a criminal case can be required to present a defense, the State must present some proof of the *corpus delicti* of the crime. *State v. Brown,* 103 S.C. 437, 88 S.E. 21 (1916). That is, the prosecution must show the actual commission by someone of the particular offense charged. *Id.; see also State v. Teal,* 225 S.C. 472, 82 S.E.2d 787 (1954). A conviction based on an extra-judicial confession by the defendant cannot stand unless corroborated by proof *aliunde*

of the *corpus delicti. State v. Williams,* 321 S.C. 381, 468 S.E.2d 656 (1996). While the *corpus delicti* can be established through circumstantial evidence, I disagree with the majority's conclusion that there is sufficient circumstantial evidence of the *corpus delicti* in this case.

Portman was charged with violating S.C.Code Ann. § 56–5–2930 (1991), which provides, in part, that it is "unlawful for any person ... who is under the influence of intoxicating liquors ... to drive any vehicle within this State." The gravamen of the offense is the operation a motor vehicle with impaired faculties. *State v. Sheppard,* 248 S.C. 464, 150 S.E.2d 916 (1966). Thus, the *corpus delicti* of the offense of DUI is: (1) driving a vehicle; (2) within this State; (3) while under the influence of intoxicating liquors or drugs. *State v. Townsend,* 321 S.C. 55, 467 S.E.2d 138, 140 (Ct.App.1996), *cert. denied,* (September 5, 1996); *State v. Osborne,* 321 S.C. 196, 467 S.E.2d 454 (Ct.App.1996) (cert. granted April 2, 1997). Thus, in order to sustain a DUI conviction, there must be evidence other than the defendant's extra-judicial statements that *someone* (but not necessarily the defendant) was driving while impaired.

In this case, disregarding Portman's statements, the only evidence of the *corpus delicti*—that someone drove the vehicle while impaired—is that Portman was one of several people, including the registered owner, who were present at the scene of a recent car accident. Portman was standing near the car with his hands behind his back and he was intoxicated. There is, however, no evidence that any other person at the scene of the accident was intoxicated. This evidence is simply insufficient to establish that the crime of DUI had occurred.

In *State v. Osborne,* there was circumstantial evidence that Osborne was driving—he was the registered owner of the car and the keys to the car were in his pocket—but there was no evidence, direct or circumstantial, that he was intoxicated at the time of the accident. In this case, while there was evidence that Portman was intoxicated, there is no evidence, either direct or circumstantial, that he was the driver of the car or that the driver of the car was impaired when the accident occurred. In fact, the circumstantial evidence makes it just as likely, if not more likely, that the registered owner of

the car, who was present at the scene, was driving the car at the time of the accident.

Single-car accidents can occur for many different reasons, including equipment failure and attempts by the driver to avoid another car, a pedestrian, or an animal. The mere fact that a wreck has occurred simply is not evidence that any crime has occurred, much less the crime of DUI. The record in this case establishes only that a vehicle left the road and came to rest against a tree. There is no evidence of excessive speed or any other factor that might give rise to an inference of impaired driving.[1] Thus, the majority's conclusion that the "manner in which the Bronco had left the road indicated the driver's operation of the vehicle had been somehow impaired" appears to rest on an impermissible assumption wrecks are caused by drunk drivers. *See State v. Brown*, 267 S.C. 311, 227 S.E.2d 674 (1976) (a motion for directed verdict should be granted for a defendant where the evidence merely raises a suspicion of guilt or permits the jury to speculate as to the accused's guilt).

Had Portman been the only person at the scene, or had he been the owner of the car, the case might properly have been submitted to the jury. Based on the evidence in this record, however, I conclude that the City of Easley wholly failed to present sufficient direct or circumstantial evidence that Portman was the driver of the car. Accordingly, I would reverse the orders of the municipal court and circuit court and remand the case for entry of judgment of acquittal.

---

1. In fact, the only evidence of the circumstances of the wreck consisted of the testimony of the arresting officer, who stated that the vehicle "ran off the road and hit a tree," and that he "could tell by the way that the vehicle ran off the road the subject's driving was impaired where he couldn't drive the vehicle properly." The officer did not testify about the presence of skid marks or any other factor that might support his bare conclusion that the accident was caused by impaired driving.